David Daneshrad (CA State Bar No. 321810)
*david@cohendaneshrad.com*
Assaf Cohen (CA State Bar No. 316546)
*jay@cohendaneshrad.com*
**COHEN & DANESHRAD, LLP**
16255 Ventura Blvd., Suite 705
Encino, California 91436
Tel: (818) 922-2424

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| VLADIMIR ISPEROV, an individual,<br><br>      Plaintiff,<br><br>  vs.<br><br>KENNEDY FUNDING FINANCIAL, LLC, a New Jersey limited liability company,<br><br>      Defendant. | Civil Case No.: 2:20-cv-04968<br><br>**COMPLAINT FOR FRAUD**<br><br><u>DEMAND FOR JURY TRIAL</u> |

    Plaintiff, Vladimir Isperov, by and through undersigned counsel, hereby brings this action against defendant Kennedy Funding Financial, LLC and alleges as follows:

### JURISDICTION AND VENUE

    1.    This Court has original subject matter jurisdiction under 28 USC § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, $75,000.00.

    2.    This Court has specific personal jurisdiction over defendant Kennedy Funding Financial, LLC because Kennedy Funding Financial, LLC has sufficient

minimum contacts with the State of California, in that: (1) defendant Kennedy Funding Financial, LLC purposefully availed itself of the privilege of conducting activities in California, thereby invoking the benefits and protections of California's laws; (2) this action arose out of and relates to its California-related activities; and (3) the exercise of jurisdiction here comports with traditional notions of fair play and substantial justice. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).

3.     Venue is proper in the Central District because a substantial part of the events or omissions giving rise to the claim occurred in this District. 28 USC § 1391(b).

## THE PARTIES

4.     Plaintiff Vladimir Isperov (hereinafter referred to as "MR. ISPEROV") is, and at all times herein mentioned was, a citizen of California residing in Los Angeles County, California.

5.     Defendant Kennedy Funding Financial, LLC (hereinafter referred to as "DEFENDANT" or "KENNEDY") is a foreign limited liability company formed under the laws of the State of New Jersey with its principal place of business located at 930 Sylvan Avenue, Suite 110, Englewood Cliffs, New Jersey 07632.

6.     No member of KENNEDY is a citizen of California.

7.     KENNEDY's members are Kevin Wolfer and Gregg Wolfer, both of whom are citizens of New Jersey.

8.     Kevin Wolfer is, and at all relevant times herein mentioned was, the President and Chief Executive Officer of KENNEDY, and Greg Wolfer is, and at all relevant times herein mentioned was, the Chief Operating Officer of KENNEDY.

## FACTUAL ALLEGATIONS

9.     At all times herein mentioned, Mr. Edwin Urrego, Chief Loan Officer of KENNEDY, was acting on behalf of KENNEDY, unless stated otherwise.

10.     On or about October of 2018, a non-party individual named Mr. Beni

Atoori approached non-party brokerage firm Lending Bee, Inc., to help secure a loan to enable him to purchase a property located at Castaic, California ("Property").

11.    DEFENDANT puts itself out as a hard money lending institution, indeed representing itself, on its website kennedyfundingfinancial.com, to be "America's most trusted bridge loan lender" with "unmatched experience which enables us to help you realize your vision" by "understanding your unique situation and then creatively craft[ing] a funding solution that best meets your needs."

12.    Furthermore, DEFENDANT represents on its website, that "[w]e're built for speed and go from approval to closing in just a few days" and that they are comprised of "industry-leading experts."

13.    DEFENDANT markets and advertises its services throughout California, including, without limitation, in numerous leading real estate/mortgage industry publications, wherein DEFENDANT unabashedly grooms its image to induce unwitting brokers and borrowers to enter sham loan commitments.

14.    Non-party Lending Bee, Inc. had no prior course of dealings with DEFENDANT and only came to know of DEFENDANT by and through one of several such publications.

15.    Thereupon, on or about November of 2018, Lending Bee, Inc. contacted DEFENDANT to enquire into funding a loan in the amount of $19,000,000 USD.

16.    Upon receipt of a loan package, DEFENDANT, by and through Mr. Urrego, issued a letter of interest, dated December 3, 2018, indicating its interest in financing a loan up to fifty-five percent (55%) of the market value of Property as security for the loan.

17.    Said letter of interest required $10,000 *via* wire transfer or certified check, the which would purportedly either be applied toward a "commitment fee" or be fully refunded if the KENNEDY loan commitment was not executed and a request was made in writing within thirty (30) days of the date of the letter of interest.

18.    On or about mid-December of 2018, the initial $10,000 refundable fee

was submitted to KENNEDY *via* wire transfer.

19.    More than thirty (30) days after issuance of its letter of interest, on or about January 23, 2019, DEFENDANT presented its "loan commitment", the which required a total "commitment fee" of $790,000, of which $150,000 was due no later than the next day, January 24, 2019 – before Property had even been appraised, raising serious questions regarding the transaction's enforceability.

20.    Mr. Beni Atoori was unable to muster the initial $150,000. Thereupon, he enquired of Lending Bee, Inc. if it would be interested in furnishing the initial $150,000 to close the deal, and immediately thereafter recapture it. Lending Bee, Inc. declined.

21.    Thereupon, Mr. Beni Atoori approached Plaintiff MR. ISPEROV, with whom he had forged a friendship, explaining his predicament and asking him if he would be willing to furnish the initial $150,000 portion of the "commitment fee" and recoup it upon closing of the deal along with a commission fee.

22.    On or about January 15, 2019, Mr. Urrego, aware of the situation, encouraged MR. ISPEROV to contact him to come up with a solution. MR. ISPEROV did so.

23.    Around the same time, in the telephonic conversation with Mr. Urrego, MR. ISPEROV expressed his willingness to front the initial $150,000 from his personal account but expressed his reluctance to do so because of his concern that DEFENDANT would not issue a refund if the transaction did not come to fruition.

24.    However, in that same conversation, Mr. Urrego unequivocally represented to MR. ISPEROV that if the deal was not consummated, for any reason, then MR. ISPEROV's $150,000 funds would be wired back to MR. ISPEROV's originating account.

25.    After making such representation to MR. ISPEROV, on or about January 23, 2019, DEFENDANT initiated the illusory non-committal "loan commitment" process.

26.    At that time, MR. ISPEROV was amid preparation for a previously

COMPLAINT

arranged trip to Mexico City, Mexico on the following day, January 24, 2019.

27.    On January 24, 2019, still uneasy in submitting a $150,000 to DEFENDANT, at approximately 5:48 AM Pacific Standard Time while at the Los Angeles International Airport, MR. ISPEROV called Mr. Urrego, DEFENDANT's representative, to seek further assurances that the initial $150,000 was fully refundable if the loan commitment, an agreement to which MR. ISPEROV was not a party, was for any reason unable to be consummated.

28.    Yet again, Mr. Urrego, on behalf of DEFENDANT, in that brief conversation, affirmatively represented to MR. ISPEROV that: (1) there was no need to worry; (2) the $150,000 was fully refundable; and (3) if the loan did not close, then DEFENDANT would simply wire the funds back to the same account from where they came.

29.    Thereupon, MR. ISPEROV, relying on DEFENDANT's representation, orally agreed to cause the initial $150,000 that DEFENDANT sought to be wired to DEFENDANT's account.

30.    On or about January 24, 2019, after having acquired the requisite guarantees, MR. ISPEROV caused $20,000 to be wired to one of DEFENDANT's bank accounts, with the remaining $130,000 to be wired soon thereafter.

31.    Indeed, on or about January 28, 2019, MR. ISPEROV caused the remaining $130,000 to be wired to DEFENDANT's bank account.

32.    On or about February of 2019, the loan commitment transaction by and between DEFENDANT and Mr. Beni Atoori failed directly as a result of a series of bad faith actions on DEFENDANT's part, all designed to prevent closing of the deal, with the preconceived intent to abscond with MR. ISPEROV's $150,000.

33.    On or about February 15, 2019, MR. ISPEROV demanded that DEFENDANT refund his $150,000, as per MR. ISPEROV and DEFENDANT's representations and oral agreement.

34.    On or about the same time, DEFENDANT refused to refund the $150,000.

- 5 -
COMPLAINT

35.     In blatant contravention of the truth, Mr. Kevin Wolfer, President and CEO of DEFENDANT, even though he was not privy to any conversations held between MR. ISPEROV and Mr. Urrego, stated, "[a]t no time did Edwin or I state that the Commitment Fee was refundable …."

36.     MR. ISPEROV made additional good faith attempts to salvage the deal to avoid loss of his $150,000. However, to MR. ISPEROV's bewilderment, DEFENDANT sought to unconscionably shakedown more funds to even consider closing the deal.

37.     As a result, on or about April of 2019, all communications between MR. ISPEROV and DEFENDANT ceased.

38.     After the events described hereinabove took place, MR. ISPEROV discovered he was a victim at the hands of DEFENDANT who has been, and is being, prosecuted in federal courts around the country for multiple claims of fraud, among other claims, over its deceptive loan commitment practices. Albeit each story is slightly different, they have employed countless iterations of the same scheme over several decades, including *inter alia*:

a.     Aroma Hotels Danbury, LLC v. Kennedy Funding – Case No. 2:09-cv-01297-SDW-MCA;

b.     Omni Credit Alliance, Inc. v. Kennedy Funding – Case No. 2:04-cv-04764-PGS-ES;

c.     A.C.N 133800969 PTY, LTD v. Kennedy Funding – Case No. 2:14-cv-00107-SRC-CLW;

d.     Professional Cleaning and Innovative Building Services, Inc. v. Kennedy Funding – Case No. 2:05-cv-02384-WJM-MF;

e.     Caribbean Bay Club, LLC v. Kennedy Funding – Case No. 2:08-cv-03924-FSH-PS;

f.     Property Invest, LLC v. Kennedy Funding – Case No. 2:04-cv-05694-JAP-MCA;

/ / /

COMPLAINT

g.    Construcciones Haus Sociedad Anonima De Capital Variable v. Kennedy Funding; Case No. 2:07-cv-00392-PGS-ES;

h.    Riverbend Crossing, LLC v. Kennedy Funding – Case No. 2:07-cv-00099-WAP-SAA;

i.    DLT International LP v. Kennedy Funding – Case No. 2:16-cv-00794-WJM-MF;

j.    The Rose Club Company, LTD v. Kennedy Funding – Case No. 3:19-cv-18127;

k.    VMV of Michigan, LLC v. Kennedy Funding – Case No. 2:04-cv-71783-VAR-RSW; and

l.    East Fork Investment Group, LLC v. Kennedy Funding – Case No. 2:09-cv-01193-SDW-MCA.

39.    MR. ISPEROV is informed and believes that DEFENDANT has engaged, and continues to engage, in the same scheme and plan whereby it induces other brokers and borrowers to enter into its illusory and non-committal "loan commitment" transactions with the intent to exercise dominion over an unearned and punitive commitment fee, and immediately thereafter causing the agreement to collapse by purposely undervaluing assets to avoid granting a loan and absconding with said commitment fee.

40.    MR. ISPEROV is further informed and believes that KENNEDY continues to pray on numerous like consumer victims in California.

/ / /

/ / /

/ / /

COMPLAINT

## FIRST CLAIM

### (Intentional Fraud)

41.    Plaintiff MR. ISPEROV incorporates by reference each and every allegation contained in Paragraphs 1 through 40 as though fully set forth herein.

42.    As alleged herein above, DEFENDANT, by and through Mr. Urrego, represented to MR. ISPEROV that a fact was true, namely that: *if* MR. ISPEROV wired $150,000 to DEFENDANT to help consummate the loan commitment transaction by and between DEFENDANT and Mr. Beni Atoori, *then*, in the event that the transaction failed for any reason, MR. ISPEROV would be refunded the full $150,000, to be rewired to MR. ISPEROV's bank count, from whence it came.

43.    DEFENDANT's representation, made by and through Mr. Urrego, was False.

44.    DEFENDANT's representation was material.

45.    DEFENDANT knew that DEFENDANT's material representation was false when DEFENDANT made it, or DEFENDANT made the representation recklessly and without regard for its truth, in that DEFENDANT never intended to refund MR. ISPEROV's $150,000, the which was wired to DEFENDANT's bank account, at the time when DEFENDANT represented that it would so refund if the transaction by and between DEFENDANT and Mr. Atoori failed.

46.    As alleged herein above, DEFENDANT intended that MR. ISPEROV rely on, and act upon, DEFENDANT's aforementioned representation.

47.    MR. ISPEROV was ignorant of the falsity of DEFENDANT's representation.

48.    MR. ISPEROV reasonably and justifiably relied on DEFENDANT's aforementioned representation.

49.    MR. ISPEROV was harmed.

50.    MR. ISPEROV suffered damages as a direct and proximate result of his reliance upon the false representation of DEFENDANT.

COMPLAINT

51.    DEFENDANT's conduct as alleged herein, was unconscionable, fraudulent, oppressive, malicious and done intentionally or in conscious disregard of Plaintiff's rights and in order to further its own financial self-interest at Plaintiff's expense, so as to justify an award of punitive damages.

52.    Plaintiff requests relief as hereinafter described.

**WHEREFORE**, Plaintiff prays for judgment against DEFENDANT on the FIRST CLAIM of his Complaint, as follows:

        a.    For damages in the amount of $150,000.00;

        b.    For exemplary and punitive damages;

        c.    For pre-judgment and post-judgment interest, as provided by law;

        d.    For attorneys' fees and costs incurred, to the extent allowable by law; and

        e.    For such other and further relief as the Court may deem just, equitable and proper.

## SECOND CLAIM
### (Promissory Fraud)

53.    Plaintiff MR. ISPEROV incorporates by reference each and every allegation contained in Paragraphs 1 through 40 as though fully set forth herein.

54.    As alleged herein above, DEFENDANT made a promise to MR. ISPEROV, namely that: *if* MR. ISPEROV wired $150,000 to DEFENDANT to help consummate the loan commitment transaction executed by and between DEFENDANT and Mr. Beni Atoori, *then*, in the event that the loan commitment failed for any reason, MR. ISPEROV would be refunded the full $150,000, to be rewired to MR. ISPEROV's bank count, from whence it came.

55.    DEFENDANT did not intend to perform this promise when DEFENDANT made it.

COMPLAINT

56.    DEFENDANT intended that MR. ISPEROV rely on DEFENDANT's promise.

57.    MR. ISPEROV did in fact rely on DEFENDANT's promise.

58.    MR. ISPEROV's reliance on DEFENDANT's promise was reasonable and justifiable.

59.    As alleged hereinabove, DEFENDANT did not perform DEFENDANT's promised act of refunding MR. ISPEROV's $150,000 by wiring it back to MR. ISPEROV's bank account after the loan commitment transaction failed.

60.    MR. ISPEROV was harmed.

61.    MR. ISPEROV suffered damages as a direct and proximate result of his reliance upon the false promise made by DEFENDANT.

62.    DEFENDANT's conduct as alleged herein, was unconscionable, fraudulent, oppressive, malicious and done intentionally or in conscious disregard of Plaintiff's rights and in order to further its own financial self-interest at Plaintiff's expense, so as to justify an award of punitive damages.

63.    Plaintiff requests relief as hereinafter described.

**WHEREFORE**, Plaintiff prays for judgment against DEFENDANT on the SECOND CLAIM of his Complaint, as follows:

a.    For damages in the amount of $150,000.00;

b.    For exemplary and punitive damages;

c.    For pre-judgment and post-judgment interest, as provided by law;

d.    For attorneys' fees and costs incurred, to the extent allowable by law; and

e.    For such other and further relief as the Court may deem just, equitable and proper.

/ / /

/ / /

- 10 -

COMPLAINT

# THIRD CLAIM

## (Constructive Fraud)

64.     Plaintiff MR. ISPEROV incorporates by reference each and every allegation contained in Paragraphs 1 through 40 as though fully set forth herein.

65.     As alleged herein above, DEFENDANT, by and through Mr. Urrego, represented to MR. ISPEROV that a fact was true, namely that: *if* MR. ISPEROV wired $150,000 to DEFENDANT to help consummate the loan commitment transaction by and between DEFENDANT and Mr. Beni Atoori, *then*, in the event that the transaction failed for any reason, MR. ISPEROV would be refunded the full $150,000, to be rewired to MR. ISPEROV's bank count, from whence it came.

66.     DEFENDANT's representation was false and ultimately misled Plaintiff.

67.     DEFENDANT's representation was material.

68.     As alleged hereinabove, DEFENDANT had no reasonable ground for believing the representation was true when it made it.

69.     DEFENDANT intended that MR. ISPEROV rely on its representation and should have known that MR. ISPEROV would detrimentally rely on it.

70.     MR. ISPEROV did in fact rely on DEFENDANT's representation.

71.     MR. ISPEROV reasonably relied on DEFENDANT's representation;

72.     At the time that DEFENDANT made its representation, MR. ISPERVO was unaware of the falsity of DEFENDANT's representation.

73.     MR. ISPEROV was harmed.

74.     MR. ISPEROV suffered damages as a direct and proximate result of his reliance upon the false representation made by DEFENDANT.

75.     Plaintiff requests relief as hereinafter described.

/ / /

/ / /

/ / /

**WHEREFORE**, Plaintiff prays for judgment against DEFENDANT on the THIRD CLAIM of his Complaint, as follows:

      a.      For damages in the amount of $150,000.00;

      b.      For pre-judgment and post-judgment interest, as provided by law;

      c.      For attorneys' fees and costs incurred, to the extent allowable by law; and

      d.      For such other and further relief as the Court may deem just, equitable and proper.

## FOURTH CLAIM

### (Conversion)

76.    Plaintiff MR. ISPEROV incorporates by reference each and every allegation contained in Paragraphs 1 through 40 as though fully set forth herein.

77.    As alleged herein above, MR. ISPEROV possessed, owned and controlled $150,000 of specifically identifiable and traceable property in the form of cash in his personal bank account, the which MR. ISPEROV consented to wire to DEFENDANT at its direction, which it accepted and used for a specific purpose – namely to help DEFENDANT and Mr. Atoori expedite DEFENDANT's loan commitment transaction.

78.    DEFENDANT never used MR. ISPEROV's $150,000 for the aforementioned consented-to purpose.

79.    DEFENDANT intentionally and substantially interfered with MR. ISPEROV's property by:

      a.      exceeding the scope of consent and wrongfully exercising dominion and control over MR. ISPEROV's $150,000 wired to DEFENDANT;

      b.      appropriating the $150,000 for its own use in order to further its own financial self-interest at Plaintiff's expense; and

      c.      refusing to return the $150,000 after MR. ISPEROV demanded its return.

COMPLAINT

80.    MR. ISPEROV did not consent to DEFENDANT's exercise of dominion and control over MR. ISPEROV's $150,000 for purposes other than consummation of the loan commitment transaction.

81.    MR. ISPEROV was harmed.

82.    As alleged hereinabove, MR. ISPEROV suffered damages as a direct and proximate result of DEFENDANT's wrongful conduct.

83.    DEFENDANT's conduct as alleged herein, was unconscionable, fraudulent, oppressive, malicious and done intentionally or in conscious disregard of Plaintiff's rights and in order to further its own financial self-interest at Plaintiff's expense, so as to justify an award of punitive damages.

84.    Plaintiff requests relief as hereinafter described.

**WHEREFORE**, Plaintiff prays for judgment against DEFENDANT on the FOURTH CLAIM of his Complaint, as follows:

      a.    For damages in the amount of $150,000.00;

      b.    For exemplary and punitive damages;

      c.    For pre-judgment and post-judgment interest, as provided by law;

      d.    For attorneys' fees and costs incurred, to the extent allowable by law; and

      e.    For such other and further relief as the Court may deem just, equitable and proper.

## FIFTH CLAIM

### (Unfair Business Practices pursuant to

### *California Business & Professions Code* § 17200, *et seq.*)

85.    Plaintiff MR. ISPEROV incorporates by reference each and every allegation contained in Paragraphs 1 through 40 as though fully set forth herein.

/ / /

COMPLAINT

86.    As alleged herein above, DEFENDANT's conduct constitutes unfair business practices in violation of *California Business & Professions Code* § 17200, *et seq.*, because DEFENDANT unfairly, unlawfully and fraudulently induced MR. ISPEROV to submit $150,000 under the deceptive representation that it would be used to consummate the loan commitment transaction by and between DEFENDANT and Mr. Beni Atoori, and if not, the funds would be refunded to MR. ISPEROV.

87.    In reliance on DEFENDANT's promise and representation, MR. ISPEROV in fact wired the total sum of $150,000 to DEFENDANT.

88.    *California Business & Professions Code* § 17200, *et seq.* incorporates and provides a basis for enforcement of business practice violations of other laws as described hereinabove in claims one through four.

89.    On information and belief, DEFENDANT has misled and deceived, and continues to mislead and deceive, other similarly situated and unwitting victims and subjecting them to the same harm as suffered by MR. ISPEROV – namely to collect a substantial sum of money without the intent to perform as represented, and thereafter abscond with the funds.

90.    The harm caused by DEFENDANT's conduct outweighs any benefit it may provide to MR. ISPEROV or any other similarly situated victims.

91.    DEFENDANT unfairly, unlawfully, and fraudulently retained, and refused to return, the $150,000 it induced MR. ISPEROV to submit, by luring MR. ISPEROV to so submit with the intent to unjustly self-enrich its financial condition at the expense of MR. ISPEROV.

92.    MR. ISPEROV was harmed.

93.    As alleged hereinabove, MR. ISPEROV suffered damages as a direct and proximate result of DEFENDANT's wrongful conduct.

/ / /

/ / /

/ / /

- 14 -

94.    DEFENDANT's conduct as alleged herein, was unconscionable, fraudulent, oppressive, malicious and done intentionally or in conscious disregard of Plaintiff's rights and in order to further its own financial self-interest at Plaintiff's expense, so as to justify an award of punitive damages.

95.    Plaintiff requests relief as hereinafter described.

**WHEREFORE**, Plaintiff prays for judgment against DEFENDANT on the FIFTH CLAIM of his Complaint, as follows:

    a.    For damages in the amount of $150,000.00;

    b.    For exemplary and punitive damages;

    c.    For pre-judgment and post-judgment interest, as provided by law;

    d.    For injunctive relief enjoining DEFENDANT, their successors, agents, representatives, employees, and all persons acting in concert with it from engaging in unfair business practices as described hereinabove;

    e.    For attorneys' fees and costs incurred, to the extent allowable by law; and

    f.    For such other and further relief as the Court may deem just, equitable and proper.

## SIXTH CLAIM

### Breach of Oral Contract

### *In The Alternative*

96.    Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 40 as though fully set forth herein.

97.    As alleged herein above, MR. ISPEROV and DEFENDANT entered into an oral contract wherein, in exchange for MR. ISPEROV's promise to submit $150,000 to DEFENDANT to consummate the loan commitment transaction by and between

- 15 -
COMPLAINT

DEFENDANT and Mr. Beni Atoori, DEFENDANT promised to refund the $150,000 if the transaction did not close.

98.   In reliance on DEFNDANT's oral promise, MR. ISPEROV did all, or substantially all, of the significant things that the oral contract required him to do, namely: on the 24th and 28th of January 2019, MR. ISPEROV wired *via* bank transfer $20,000 and $130,000 respectively, totaling $150,000.

99.   As alleged herein above, DEFENDANT was required by the contract to return the funds to MR. ISPEROV if the transaction did not close.

100.   DEFENDANT breached its oral contract with MR. ISPEROV by refusing to return his $150,000.

101.   As a result, Plaintiff was harmed.

102.   As alleged hereinabove, MR. ISPEROV suffered damages as a direct and proximate result of DEFENDANT's breach.

103.   Plaintiff requests relief as hereinafter described.

**WHEREFORE**, Plaintiff prays for judgment against DEFENDANT on the SIXTH CLAIM of his Complaint, as follows:

a.   For damages in the amount of $150,000.00;

b.   For pre-judgment and post-judgment interest, as provided by law;

c.   For attorneys' fees and costs incurred, to the extent allowable by law; and

d.   For such other and further relief as the Court may deem just, equitable and proper.

/ / /

/ / /

/ / /

- 16 -

COMPLAINT

## SEVENTH CLAIM

### (Common Count: Money Had and Received)

#### *In The Alternative*

104.   Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 22 as though fully set forth herein.

105.   As alleged herein above, DEFENDANT received $150,000 from MR. ISPEROV that was intended to be used for the benefit of MR. ISPEROV, in that, *if* the loan commitment transaction closed, *then* MR. ISPEROV would secure a commission.

106.   The money was not used for the benefit of the MR. ISPEROV because the loan commitment transaction did not close.

107.   Because the loan commitment transaction did not close, MR. ISPEROV is entitled to the return of his $150,000 that he submitted to DEFENDANT.

108.   DEFENDANT has not given the money back to MR. ISPEROV.

109.   As a result, DEFENDANT remains unjustly enriched.

110.   Plaintiff requests relief as hereinafter described.

**WHEREFORE**, Plaintiff prays for judgment against DEFENDANT on the SEVENTH CLAIM of his Complaint, as follows:

      a.      For damages in the amount of $150,000.00;

      b.      For pre-judgment and post-judgment interest, as provided by law;

      c.      For attorneys' fees and costs incurred, to the extent allowable by law;

      d.      For such other and further relief as the Court may deem just.

DATED: June 4, 2020           COHEN & DANESHRAD, LLP

                       By: */s/ Assaf Cohen*
                           David Daneshrad
                           Assaf Cohen

                           Attorneys for Plaintiff

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff hereby requests a jury trial on all issues triable thereby pursuant to

3   *Federal Rules of Civil Procedure* 38(b).

4

5   DATED: June 4, 2020                    COHEN & DANESHRAD, LLP

6                                          By: */s/ Assaf Cohen*

7                                              David Daneshrad
                                               Assaf Cohen
8

9                                              Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -

COMPLAINT